**BAGGETT TRANSP. CO. v. UNITED STATES et al.**

Civ. A. No. 7223.

United States District Court
N. D. Alabama, S. D.

Nov. 4, 1953.

Ormond Somerville, Birmingham, Ala., Wrape & Hernly, Washington, D. C., for plaintiff.

Stanley N. Barnes, Asst. Atty. Gen., James E. Kilday and Kenneth R. Lindsay, Sp. Assts. to Atty. Gen., and Frank M. Johnson, Jr., U. S. Atty., Birmingham, Ala., for the United States.

Leo H. Pou, Asst. Chief Counsel, Interstate Commerce Commission, Washington, D. C., for Interstate Commerce Commission.

D. H. Markstein, Jr., and John W. Cooper, Birmingham, Ala., for defendants C. R. Floyd and J. D. Beasley, d/b/a Floyd & Beasley Transfer Co., and Central Alabama Express, Inc.

Before RIVES, Circuit Judge, LYNNE, Chief Judge, and GROOMS, District Judge.

LYNNE, Chief Judge.

This action, brought under Title 28, U.S.C.A. §§ 1336, 2284, and 2321–2325, seeks to have the court vacate and set aside certain orders of the Interstate Commerce Commission [1] in a proceeding under Section 5 of the Interstate Commerce Act, 49 U.S.C.A. § 5.[2] By such orders the Commission approved and authorized the purchase by C. R. Floyd and J. D. Beasley, partners, doing business as Floyd & Beasley Transfer Company,[3] of certain motor common carrier operating rights of Central Alabama Express, Inc.,[4] and found that upon consummation of the said transaction Floyd & Beasley would be entitled to a certificate of public convenience and necessity authorizing operations in interstate or foreign commerce to the extent Express had been operating under the rights thus transferred. The United States was made a defendant, as required by Title 28 U.S.C.A. § 2322, and the Commission, Floyd & Beasley, and Express were also named as defendants. The jurisdiction of the court is admitted.

Floyd & Beasley and Express filed their joint application with the Commission on February 16, 1951, for approval and authorization of the proposed purchase by the former of the latter's operating rights, and for the issuance to Floyd & Beasley of a certificate of public convenience and necessity covering the said rights. The application alleged that both purchaser and seller were motor carriers operating in interstate commerce; that together they owned and operated in excess of twenty motor vehicles, and that the subject matter of the proposed purchase included a certificate of public convenience and necessity issued to Express by the Alabama Public Service Commission, under which Express was engaged in interstate operations solely within the State of Alabama by virtue of the second proviso in Section 206(a) of the Act.

By notice issued April 2, 1951, the Commission informed the applicants and numerous other interested parties, including the present plaintiff, Baggett Transportation Company, that the application would be heard before a Commission examined at Birmingham on April 30, 1951, and that:

"At such hearing, opportunity will be afforded for introduction of the usual evidence adduced in section 5 proceedings, and evidence as to whether in the event the proposed transaction is approved and consummated, a certificate of public convenience and necessity should be issued to [Floyd & Beasley] covering operations in interstate or foreign commerce as a motor vehicle common carrier * * * which are presently being conducted by [Express] under the partial exemption of the second proviso of Section 206(a)."

After two postponements, the application was heard on September 20, 21, and 22, 1951. Fourteen shipper representatives and four motor carrier representatives testified in support of the application, and fourteen motor carriers (including Baggett) intervened in opposition thereto. Testimony (859 transcript pages) was taken during three full days, and a large volume of documentary evidence was received. On February 19, 1952, the examiner submitted his pro-

---

1. Hereinafter referred to as the Commission.

2. Hereinafter referred to as the Act.

3. Hereinafter referred to as Floyd & Beasley or the partnership.

4. Hereinafter referred to as Express.

posed report, recommending approval of the proposed transaction (except as to certain particulars) and issuance of a certificate to the purchaser. Exceptions were thereafter filed by the applicants as well as by the intervenors in opposition.

The report of the Commission, Division 4, was entered August 19, 1952, together with its order approving Floyd & Beasley's purchase of most, but not all, of the operating rights of Express, and authorizing the issuance to Floyd & Beasley of a certificate covering the purchased rights upon consummation of the transaction. A copy of the report and order appears as Appendix A to the complaint herein, and the report is printed in 58 M.C.C., commencing at page 507.

On October 24, 1952, Baggett and one other motor carrier, Malone Freight Lines, filed with the Commission a petition for reconsideration, the other carriers who had opposed the application not joining therein. On February 2, 1953, the entire Commission entered an order denying the petition. That was the final order in the proceeding, and a copy of it also is appended to the complaint.

This complaint was originally filed in court by Baggett and Malone, as joint plaintiffs, but was amended a few days later so as to eliminate Malone and leave Baggett as the sole plaintiff.

The main thrust of plaintiff's argument is against the jurisdiction of the Commission under Section 5 of the Act [5] to entertain an application by a multiple-state certificated carrier for authority to purchase the properties of a carrier which operates physically within but a single state but whose activities involve the transportation of passengers or property in interstate or foreign commerce between places within such state under an intrastate certificate, as authorized by the second proviso of Section 206(a) of the Act.[6]

Reliance is placed upon the Commission's denial of its jurisdiction in an identical factual situation in Baggett-Purchase-Bishop, 36 M.C.C. 659, decided May 5, 1941. It is insisted that the rationale of the opinion which prevailed then is the true touchstone for construction of Section 5(2) of the Act. However, it is interesting to note that on September 11, 1942, in C. & D.-Purchase-Elliott, 38 M.C.C. 547, the Commission receded from its former position

---

5. Section 5(2):
   "(a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b)—
   "(i) * * * for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; * * *

   "(b) Whenever a transaction is proposed under subparagraph (a), the carrier or carriers or person seeking authority therefor shall present an application to the Commission, and thereupon the Commission shall notify [certain specified persons], and shall afford reasonable opportunity for interested parties to be heard. If the Commission shall consider it necessary in order to determine whether the findings specified below may properly be made, it shall set said application for public hearing; * * *. If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is with-

in the scope of subparagraph (a) and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable: * * *." 49 U.S.C.A. § 5 (2) (a) and (b).

6. Section 206(a):
   "* * * *And provided further,* That this paragraph [requiring a certificate for a motor common carrier to engage in interstate operations] shall not be so construed as to require any such carrier lawfully engaged in operation solely within any State to obtain from the Commission a certificate authorizing the transportation by such carrier of passengers or property in interstate or foreign commerce between places within such State if there be a board in such State having authority to grant or approve such certificates and if such carrier has obtained such certificate from such board. * * *" 49 U.S.C.A. § 306(a).

and in an unbroken line of decisions throughout the past eleven years [7] has claimed and exercised jurisdiction under similar circumstances.

It must be acknowledged that the jursdiction of the Commission must arise from the Act of its own creation and is not one which it is free to exercise or abdicate ex proprio motu. This court must now assume the task of construing for itself the provisions of Section 5(2) of the Act, wherein all of the parties to this litigation agree that the grant of jurisdiction resides if, indeed, it does exist. That is not to say, however, that this section must be wrenched from its context and that the court should blind itself to the congressional effort to integrate into the vast, national transportation scheme the fragmentary but essential operations of intrastate motor carriers.

Careful consideration of this section leads to the conclusion that a "second proviso operator" is a carrier, within the definition contained in Section 1 of the Act, and that its right to engage in interstate commerce is contemplated by and included within the generic term "properties", as it appears in Section 5(2). It follows that such right is intrinsically valuable and that it may not be sold or transferred to another carrier without the approval and authorization of the Commission. To that body the Congress has entrusted the function of determining whether the proposed sale or transfer will be consistent with the public interest and has directed it to

consider expressly enumerated factors. We hold that the Commission clearly had the jurisdiction which it asserted in this proceeding.

Of course, if the purchaser of the interstate authority of a "second proviso operator" is a multiple-state certificated carrier, it may not perform the transportation services which its vendor was authorized to furnish until after issuance by the Commission of the certificate required by Section 207(a) of the Act.[8] In passing upon the purchaser's application for such a certificate it is quite true, as plaintiff contends, that the Commission is required to apply different criteria.

Such insistence points up one of plaintiff's basic complaints. Adverting to the fact that the Commission has delegated to Division 5 the responsibility for considering applications for certificates, while to Division 4 it has committed the authority to pass upon "finance applications", plaintiff is disgruntled because Division 4 undertook to perform both functions in this instance.

We find no merit in this narrow contention. Section 17 of the Act empowers the Commission to divide its members into divisions and generally clothes the orders, decisions and requirements of each division with the authority of the whole Commission. And the Commission was explicitly enjoined to conduct its proceedings "in such manner as will best conduce to the proper dispatch of

7. Adkins–Purchase–Elliott and Ollis, 38 M. C.C. 75, 78; Lawler–Purchase–McCrary, 38 M.C.C. 87; Harkness–Lease–Santa Fe Trail Transp. Co., 38 M.C.C. 91; Coughlin–Control–Valley & Coast Transit Co., 38 M.C.C. 801; Citizens Auto Stage Co.–Purchase–Arizona Exp., Inc., 38 M.C.C. 804; Central Freight Lines, Inc.–Purchase–Webster, 38 M.C.C. 337; Bond–Purchase–Green Truck Lines, Inc., 38 M. C.C. 275; and Missouri & Arkansas Transp. Co.–Purchase–Lindley, 38 M.C.C. 397.

8. Section 207(a):
"* * * a certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this part and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; * * *." 49 U.S.C.A. § 307 (a).

business and to the ends of justice." 49 U.S.C.A. § 17(3).

Nothing but frustration could have resulted from the procedural steps upon which plaintiff insisted. First, the application for purchase of the properties of the "second proviso operator" must have been processed by Division 4. Basic facts must have been found and weighed and the ultimate conclusion reached that the proposed transaction was consistent with the public interest. Thereafter, such transaction having been authorized, the purchaser must have applied for a certificate, and Division 5 must have entertained the new application, must have considered anew most of the evidence received by Division 4, and must have concluded that the interstate service formerly performed by the seller and proposed to be continued by the buyer was required by the present or future public convenience and necessity.

Merely to state the proposition is to demonstrate its absurdity. A single division should and did consider related matters. All carriers, with whose services the operations proposed to be performed under the requested certificate would be directly competitive, were notified of the application, as required by the rules of Division 5. Thus no substantial injury did or could result from the single, as opposed to the dual, nature of the proceedings.

Although conceded by the parties, this court would emphasize that a division of the Commission entertaining a joint finance and certificate application is required to make the distinctive findings required by Sections 5(2) and 207(a), respectively, upon evidence which is substantial and relevant to each. That such ultimate findings were made in this instance is not in dispute.

This court has heretofore had occasion to state its understanding of the scope of its review in cases of this nature. Cf. American Trucking Ass'ns v. United States, D.C., 101 F.Supp. 710. The foregoing discussion may be reduced to a conclusion that the orders of the Commission were neither beyond its statu-

tory power nor were they based upon mistake of law or misapplication of proper statutory standards.

Study of the Commission's report, upon which its orders were based, and a review of the record of the proceedings before it, leave us in no doubt. The Commission's orders are supported by adequate findings based upon substantial evidence.

It follows that plaintiff is not entitled to the relief for which it prays and that this action is due to be dismissed with prejudice.